UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION
Case No. 4:23-cv-10072

Orlando Lopez-Roman,
   Plaintiff

vs.

Future Motion, Inc.,
   Defendant

_____/

### COMPLAINT AND JURY DEMAND
### Parties and Citizenship

1. Plaintiff Orlando Lopez-Roman is a resident of Key West, FL.

2. Defendant Future Motion, Inc. is a Delaware Corporation with its principal place of business in the County of Santa Cruz at 1201 Shaffer Road, Santa Cruz, California, 95060.

3. Defendant is subject to the jurisdiction of courts in Florida because Defendant:

   a. Committed a tortious act within Florida [F.S. § 48.193(1)(a)(2)].

   b. Caused injury to Plaintiff within Florida arising out of an act or omission by Defendant outside of Florida because, about the time of the injury, either:

      i. Defendant was engaged in solicitation of Plaintiff within Florida to purchase a Onewheel PINT X (Serial # 2247389932) and did consummate the $1,806 sale which Defendant shipped from California to Plaintiff in Key West for use in Monroe County, Florida, or

      i) A Onewheel PINT X product was processed or manufactured by Defendant anywhere and was used in Florida in the ordinary course of commerce, trade, or use [F.S. § 48.193(6)(a)-(b)].

   c. Defendant purposefully availed itself of the benefits and protections of the laws of Florida having sufficient contact that the exercise of jurisdiction would be consistent with the traditional notions of fair play and substantial justice.

### Diversity Jurisdiction

4. Plaintiff demands damages from Defendant of more than $75,000.

5.   Plaintiff is a citizen of Florida and Defendant is a citizen of Delaware.

6.   This Court has subject matter jurisdiction [28 U.S.C. § 1332(a)(1)] and pendent supplemental jurisdiction over the Florida state law claims [28 U.S.C. § 1367].

7.   Venue is proper under 28 U.S.C. § 1391(b)(2) because Key West, Florida is the judicial district where the events giving rise to the claim occurred.

### Origins of Action

8.   Plaintiff purchased a Onewheel PINT X for $1,806.00 directly from Defendant over the Internet which Defendant shipped to Key West, FL on 12/16/2022 (see exemplar, below)



9.   Plaintiff used the Onewheel for recreation on a private paved drive near his home, riding the Board ~105 miles between 12/30/2022 and 03/18/2023.

10.   Before using the board, Plaintiff reviewed Onewheel literature, Owner's Manual, Quick Start Guide, watched videos (including those on safety, how to ride, pushback and more), and studied advertisements on Defendant's website.

11.   Only after being abruptly ejected from the Onewheel on 03/18/2023 did Plaintiff discover that all Onewheel models present an undisclosed, fatal danger to riders.[1]

12.   The Onewheel GT (a different model than the PINT X) has a *Bystander Injury Hazard* (sometimes called the *Ghosting Defect*) as the footpad can fail to disengage after the rider has dismounted and the board unexpectedly continues to run on, posing a hazard riders and bystanders.

13.   On 08/11/2022 at the request of the U.S. Consumer Product Safety Commission (CPSC),

---

[1] Onewheel, *What's Actually Happening With The CPSC?*, YouTube (11/12/2022).

Defendant recalled 20,500 GT models to replace the defective footpad.

14.  Though purchasing the Onewheel PINT X on 12/16/2022 (more than 2 months after the recall), Plaintiff's board suffered from the *Ghosting Defect* resulting in devastating injuries to Plaintiff.

15.  The Onewheel PINT X has embedded software which is programmed with a *Pushback Warning* system that is supposed to alert riders of the risk of ejection due to excessive speed, extreme road grade, imbalancing; however, the Pushback Warning does not warn of an abrupt shut down.

16.  Plaintiff was aware of, and experienced, the *Pushback Alert.*

17.  The *Pushback Warning* on Plaintiff's Onewheel PINT X never alerted Plaintiff or any other rider of an impending nosedive-ejection.

18.  The PINT X was defective because the Onewheel abruptly stopped balancing Plaintiff on 03/18/2023, in turn, forcing Plaintiff forward as the motion of the board violently halted, dropping the nose of the footpad onto the asphalt catapulting Plaintiff off the board onto the asphalt.

19.  On 03/18/2023, no *Pushback Warning* alerted Plaintiff to an imminent and violent halting of the PINT X.

20.  Plaintiff was riding the PINT X at ~12 mph (where the posted speed limit was 15 mph), on smooth (zero grade) dry asphalt, where the road was 20' wide and in a private neighborhood with no traffic and good line-of-sight; there was no precipitation on this sunny day with a temperature of ~80º F, winds SSE ~12 mph.

21.  After riding about 0.2 mile, wearing shoes with good gripping soles while carrying nothing, Plaintiff's PINT X suddenly stopped, pushing the front footpad into a nosedive that scraped along the asphalt until catapulting him onto the road where he landed on his face and arm (see exemplar below).



**Plaintiff's Damages**

22.    Because of the PINT X's nosedive-ejection, Plaintiff incurred medical expenses of at least $164,919 for injuries suffered (as detailed below).

23.    Plaintiff was flown by air ambulance from Key West to Miami (for possible neurosurgery due to a suspected subdural hematoma) and was hospitalized 4 days, 3 in the Intensive Care Unit.

24.    As a proximate cause of the Onewheel's defective condition, Plaintiff suffered these injuries:

    a.    Air ambulance to Miami for possible neurosurgery

    b.    Pin surgically inserted into fractured left wrist, later removed with pliers

    c.    Compound fracture of left arm; surgery to insert 2 plates and 16 screws; an arm cast; possible bone graft surgery to repair hole in left ulna

    d.    Lacerations on left forearm required stitches

    e.    Traumatic head injury including concussion, fractured forehead, swollen eye

    f.    Road rashes (abrasions) on arms, head & legs

    g.    Multiple bruises on shoulder, arm, leg, knee, ankles, face, head, ear

    h.    Concussion (head), dizziness for 2 weeks

    i.    Dislocated right knee (1 week after accident)

    j.    3 days Intensive Care Unit (Jackson South Community Hospital), plus 1 day in a step-down unit

    k.    3 days bed rest (Marriott Courtyard in Miami)

    l.    23 days off work while convalescing at home in Key West

m.     Nearly 6 weeks in a cast

n.     Weeks of physical therapy including one year before maximum recovery

o.     2 months or more unable to perform surgical procedures which required extra effort to work down the backlog of hundreds of patient surgeries

p.     Pain and suffering, loss of sleep, loss of consortium with wife, post-traumatic stress disorder (PTSD)

q.     Possible permanent partial disability of left arm (including contracture of left thumb which disaffects performance of endoscopy surgeries)

r.     Other injuries to be determined.

### Damages Suffered by Plaintiff

### No Comparative Negligence

25.    Plaintiff Orlando Lopez-Roman, M.D., FACG, AGAF is board certified in Gastroenterology and Internal Medicine and is licensed in 3 states.

26.    Plaintiff is an active parent with 2 elementary school-age children and a highly-skilled athlete who regularly engages in normal sports including tennis, pickleball, bicycle riding, trail running, paddle boarding, and Salsa dancing.

27.    Plaintiff is proficient and actively engages in extreme sports including wall climbing, kite boarding, mountain biking and snow skiing.

28.    Plaintiff is an experienced Onewheel rider having ridden ~70 miles during ~35 trips around his neighborhood (from 12/30/2022 to 03/18/2023).

29.    Before Plaintiff's accident (on 03/18/2023), he never experienced, nor was he aware of, the potential for the *Nosedive-Ejection Hazard* involving a Onewheel.

### No Mitigating Factors

30.    Plaintiff made a claim with his automobile insurer for this Onewheel accident, was denied coverage as the insurer indicated that Plaintiff is not eligible for any personal injury protection (PIP) or medical payment benefits [F.S. § 627.736(3)] since his insurance only covers an accident involving "automobile."

31.    Plaintiff's Onewheel was not being misused at the time of the incidents.

32.    At the time of his accident, Plaintiff was not under the influence of alcohol or any mind-altering drug [F.S. § 768.36].

33.   Defendant is entitled to no apportionment as there was no comparative fault [F.S. § 768.81(3)].

### Defect - *No Pushback Warning* Before Nosedive-Ejection

34.   The Pint X may provide *Push Back Warning* which manifests itself by the nose of the board lifting upward, thus, alerting the rider to slow down.

35.   A *Push Back Warning* will occur if a rider attempts to goes too fast, descends a steep hill, rides with an overcharged battery.

36.   The Pint X is defective because it provided no *Push Back Warning* before Plaintiff's Onewheel abruptly halted which caused Plaintiff's Pint X to nosedive, halt and eject Plaintiff onto the pavement.

### Defect – Pint X Battery Box Design & Wiring Defect

37.   Upon information and belief,[2] the Balancing Wires [leading from the battery pack to the Battery Management System (BMS) connector] in Plaintiff's Pint X may have become crimped or frayed:



   a.   During manufacturing when the wire harness was bent ~90° around a pass-through slot with 3 sharp edges.

   b.   During Onewheel use by the Balancing Wires vibrating on the sharp edges of the pass-through slot.

   c.   Prohibiting all 30 battery cells in the 15 groups of the 2 batteries from being properly balanced and charged which resulted in Plaintiff's Onewheel having inadequate battery power to produce a *Push Back Warning* before it abruptly halted, ejecting Plaintiff.

38.   In Plaintiff's Pint X battery box, the main power negative lead from the battery pack to the XT60 plug/connector is too short and can disconnect or electrically short causing a sudden loss of power and an abrupt motor shutdown.

39.   In the Pint X battery box, the UltraCharger (a/k/a HyperCharger) outputs 3 amps into a

---

[2] These allegations are upon information and belief because these factual contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery [Fed. R. Civ. P. 11(b)(3)].

connector that is also rated at 3 amps and this has damaged, burnt, or melted the connection which prevented all 30 battery cells in the 15 groups of the 2 batteries from being properly balanced.

40. Plaintiff relied on the BMS State of Charge (SOC) on the Future Motion App which overstated the battery SOC by a factor of as much as 8 misleading Plaintiff into believing that the battery's SOC was greater than it actually which placed Plaintiff in jeopardy of riding the Pint X when it was prone to suddently shutting down for lack of battery power.

41. Plaintiff's Pint X depleted its cell voltages below 2.5V (which is the minimum required voltage set by the manufacturer Sansumg for the Lithium-ion rechargeable cell for power tools, Model name INR18650-30Q placing that Onewheel at risk of a sudden, unwarned shutdown.

**Multiple Complaints of Abrupt Nosedive-Ejections**

42. Defendant knew of the *Nosedive-Ejection Hazard* before selling the PINT X to Plaintiff but failed to adequately warn Plaintiff of what to expect.

43. Upon information and belief, before selling the Onewheel PINT X to Plaintiff on 12/16/2022, Defendant's Authorized Dealers had been asked on multiple occasions to repair similar defects in various Onewheel models.

44. The U.S. Consumer Protection Safety Commission reported 4 deaths of Onewheel riders being injured by the *Nosedive-Ejection Hazard.*

**Future Motion Defends Federal Lawsuits**

45. As manufacturer and seller, Defendant's actual knowledge of 2 defective conditions concerning its Onewheel products is irrelevant to Defendant's liability for its breach of an implied warranty of fitness.[3]

46. After accidents occurring from 2019 to 2023, riders complained that, while riding a Onewheel with a nearly full battery and without any Push-back or other warning, their board suddenly stopped and nosedived (causing the front of the board to violently and unexpectedly slam into the terrain), catapulting the rider forward and off of the board causing serious injury (i.e., *Nosedive-Ejection Hazard).*

---

[3] *Green v. American Tobacco Co. (*1963), 325 F.2d 673, certiorari denied 84 S.Ct. 1349, 377 U.S. 943, 12 L.Ed.2d 306.

47.  Defendant knew of this *Nosedive-Ejection Hazard* from the 34 Plaintiffs who filed 19 lawsuits since 2019 against Future Motion in U.S. District Courts sitting in 9 States (CA, CO, FL, IL, LA, MA, OR, TN, WA) alleging abrupt Onewheel motor stoppage without any Pushback Warning on multiple Onewheel models (Onewheel+, Onewheel XR, Onewheel+XR, Onewheel Pint and Onewheel Pint X) resulting in a nosedive that catapulted the rider off the board.

48.  Attorney for Plaintiffs signed Complaints [representing under Fed. R. Civ. P. 11(b)(3) that the factual contentions had evidentiary support)] in the following cases:

    a.  *Reutov v Future Motion,* USDC-MA, 19-cv-10502;

    *b.*  *Soto v. Future Motion,* USDC-ND-CA, 20-cv-06982;

    c.  *Gonzalez v. Future Motion,* USDC-OR, 3:21-cv-60;

    d.  *Lowell v. Future Motion,* USDC-OR, 1:21-cv-470;

    e.  *Chandler v. Future Motion,* USDC-TN, 1:21-cv-205;

    f.  *Schromm v. Future Motion,* USDC-LA, 21-cv-1046;

    g.  *Loh, Foo, Smith, Rico, Wang, Holt, Nichols, Forcella, Guilford, Grant, Leombruno, Murphy, Powell, Reber, Bonner and Flott et al. v. Future Motion,* USDC-ND-CA, 5:21-cv-06088;

    h.  *Pannucci v. Future Motion,* USDC-MD-FL, 6:21-cv-01953;

    i.  *Elliott v. Future Motion,* USDC-MD-FL, 3:22-cv-65;

    j.  *Koop v. Future Motion,* USDC-MD-FL, 3:22-cv-134;

    k.  *McNair v. Future Motion,* USDC-MD-FL, 3:22-cv-329;

    l.  *Edwards v. Future Motion,* USDC-SD-FL, 22-cv-60352;

    m.  *Perez v. Future Motion,* USDC-MD-FL, 6:22-cv-586;

    n.  *Ibarra v. Future Motion,* USDC-SD-FL, 22-14067-civ;

    o.  *Bunnell v. Future Motion,* USDC-CO, 22-cv-01220;

    p.  *Sternik v Future Motion,* USDC-WA, 22-1534;

    q.  *Gregie v. Future Motion,* USDC-ND-IL, 1:22-cv-05528;

    r.  *Smith v. Future Motion,* USDC-MD-FL, 8:22-cv-320;

    s.  *Scott v. Future Motion,* USDC-MD-FL, 8:22-cv-1748;

49.  Defendant has been sued in California State Court in 87 or more cases involving Onewheel

accidents and, upon information and belief, some of those lawsuits involve allegations of damages due to the *Nosedive-Ejection Hazard.*

50.     Defendant had a duty to warn Plaintiff of the inherent dangers in the Onewheel because Defendant knew of the potentially fatal injury and serious damage that could result from riding a Onewheel.[4]

**Defendant Rejects CPSC Recall Request**

51.     The U.S. Consumer Product Safety Commission (CPSC) has received innumerable complaints about this *Nosedive-Ejection Hazard.* and on 11/16/2022 the CPSC issued a "warning [to] consumers about the risk of death and serious injury" from Onewheel use:[5]

---

[4] *Advance Chemical Company v. Harter,* 478 So.2d 444 (Fla. 1st DCA 1985).

[5] See CPSC Warns Consumers to Stop Using Onewheel Self-Balancing Electric Skateboards Due to Ejection Hazard; At Least Four Deaths and Multiple Injuries Reported, CONSUMER PRODUCT SAFETY COMMISSION (Nov. 16, 2022), https://www.cpsc.gov/Newsroom/News-Releases/2023/CPSC-Warns-Consumers-to-Stop-Using-Onewheel-Self-Balancing-Electric-Skateboards-Due-to-Ejection-Hazard-At-Least-Four-Deaths-and-Multiple-Injuries-Reported



**UNITED STATES**
**CONSUMER PRODUCT SAFETY COMMISSION**
4330 EAST WEST HIGHWAY
BETHESDA, MD 20814

**FUTURE MOTION REFUSES TO RECALL DEADLY ONEWHEEL SKATEBOARD**

**NOVEMBER 16, 2022**

Immediately stop using all Onewheel electric skateboards—they are not worth dying for.

Future Motion's Onewheel self-balancing electric skateboard have a fatal defect: they can eject their riders, causing serious injury and death. At least four people have tragically died from traumatic head injuries.

CPSC instructed Future Motion to stop selling the Onewheel and to advise its customers not to use this dangerous product. The company refused. Future Motion is unwilling to take appropriate action to fix a product hazard that has killed people.

52.     Defendant rejected the CPSC's recall request as "unjustified" and "alarmist" stating that Defendant Future Motion "see[s] no reason for riders to stop using their boards or new riders to not purchase one."[6]

53.     Defendant placed a link on its website (www.onewheel.com) regarding the 08/11/2022 RECALL of 20,500 Onewheel GT models for the *Ghosting Defect* which Defendant placed on page 12 of its home page, tucked among 20 other links.

54.     Differently, Defendant never added a website link to the CPSC's 11/16/2022 recall request (Release Number 23-046) for the *Nosedive-Ejection Hazard* and had Plaintiff seen that CPSC Release, he would never have purchased the Onewheel PINT X and never would have ridden any Onewheel.

55.     Defendant's failure to advise consumers of the 11/16/2022 CPSC recall request was an

_____

[6]https://www.cpsc.gov/Newsroom/News-Releases/2023/CPSC-Warns-Consumers-to-Stop-Using-Onewheel-Self-Balancing-Electric-Skateboards-Due-to-Ejection-Hazard-At-Least-Four-Deaths-and-Multiple-Injuries-Reported

unconscionable, unfair or deceptive act or practice, offended public policy, was immoral, unethical, oppressive, unscrupulous, and caused substantial injury to consumers.

**Deceptive, Unconscionable or Unfair Warning**



56.   A printed Owner's Manual (Ver. 2.0) arrived with Plaintiff's Onewheel PINT X but provided an insufficient and inadequate WARNING because it omits what riders have alleged in the event of a nosedive-ejection:[7]

57.   Under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) [F.S. § 501.204(1)], this WARNING is an unconscionable, unfair and/or deceptive act or practice, offends public policy, is immoral, unethical, oppressive, unscrupulous, and has caused substantial injury to consumers who have suffered wrongful death and personal injuries because this WARNING fails to disclose a recurrent hazard known to Defendant affecting some Onewheel models (namely intermittent and abrupt halting of the Onewheel resulting in a nosedive that catapults a rider from his Onewheel causing serious injury).

58.   Defendant's WARNING should have disclosed full details about the *Nosedive-Ejection Hazard* allowing Plaintiff, when he was a potential purchaser, to make an informed decision about the undisclosed risk of riding a Onewheel.

59.   Defendant's product WARNING (above) was inadequate and was a proximate cause of Plaintiff's injuries because, had he been fairly warned of the defects, he would never have bought the offending Onewheel.[8]

**Forthright, Consciable and Fair Warning**

60.   Defendant was a manufacturer and seller of an inherently dangerous product and, as such, had a duty to give Plaintiff fair and adequate warning of the Onewheel's potentially

---

[7] *Onewheel Pint & Pint X Owner's Manual Ver. 2.0* (p. 5, Safety Overview).
[8] *Salinero v. Johnson & Johnson,* 995 F.3d 959 (11th Cir. 2021).

dangerous propensities.[9]

61.    A complete, forthright, conscionable and fair warning would read:

---

**WARNING**

☛ In 2022, the U.S. Consumer Product Safety Commission (CPSC) warned of a hazard that can abruptly stop a Onewheel without any warning and thrust the rider into a nosedive. From 2019-2022, there were reports of at least 4 deaths from head trauma plus dozens of serious injuries when a Onewheel was in motion but failed to balance the rider and then suddenly stopped. Rider injuries have included death, face-plant, traumatic brain injury, concussion, upper-body and lower-body fractures, road rash, paralysis and ligament damage.

☛ Future Motion, Inc. refused a CPSC recall request stating that all boards are safe, seeing no reason for riders to stop using their boards or for new riders not to buy one.

☛ Onewheels are dangerous even when following safe-riding principles common to any board sport. Always be prepared for an abrupt ejection without warning if you hope to lessen your chances of serious injury, death or paralysis.      \*\*\*  **Ride at Your Own Risk \*\*\***

---

## COUNT ONE - DECEPTIVE AND UNFAIR TRADE PRACTICES

Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth here and further states:

62.    Defendant engaged in "trade or commerce" by advertising, offering and selling a Onewheel PINT X (which is a tangible good) [F.S. § 501.203(8)] which Defendant shipped from California to Plaintiff in Key West, Florida.

63.    Plaintiff is a "consumer" under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) [F.S. § 501.203(7)] as he purchased this Onewheel PINT X new directly from Defendant.

64.    Defendant was at all pertinent times a "merchant" with respect to electric hoverboards [F.S. § 672.104(1)] and a "seller" [F.S. § 672.103(1)(d)].

65.    In conducting such trade or commerce, Defendant engaged in unconscionable, unfair or

---

[9] *Edwards v. California Chemical Co.* (Fla. App. 4 Dist.), 245 So.2d 259 (1971), cert. den. 247 So.2d 440.

deceptive acts or practices that are unlawful under the FDUTPA [F.S. § 501.204(1)].

66.     Defendant aggravates the harm caused by the *Ghosting Defect,*[10] as well as the *Nosedive-Ejection Hazard* by promoting Onewheels as harmless "toys," that "anyone" can ride.[11]

### *No Warning of Nosedive-Ejection Hazard*

67.     The *Nosedive-Ejection Hazard* was known to, but concealed by, Defendant as it was not an open and obvious risk of which Plaintiff was or should have been aware.

68.     Defendant's pre-purchase WARNING in its Owner's Manual (which Plaintiff read online prior to purchase) fails to identify and explain in detail the *Nosedive-Ejection Hazard.*

69.     Defendant's WARNING was unfair, unconscionable and deceptive because it failed to specifically alert Plaintiff to the *Nosedive-Ejection Hazard* in sufficient detail so that a reasonable rider might comprehend the fatal danger posed by this risk when riding a Onewheel.

70.     Had Plaintiff read a forthright and fair warning (as pled above), he would NEVER have bought and NEVER have ridden any Onewheel.

71.     In its advertising, on its website and before consummating Plaintiff's Onewheel purchase, Defendant engaged in unconscionable, unfair or deceptive acts or practices by failing to provide the following WARNINGS to Plaintiff:

a.      That at least 4 Onewheel riders have died under circumstances that were allegedly due to the board's defects, but which Defendant brushed-off in each instance as being solely due to "rider error."

b.      That at least 32 riders have sued Future Motion, Inc. in 17 Federal Court cases over death or serious injuries allegedly caused by the *Nosedive-Ejection Hazard.*

c.      There are over 100 pending lawsuits against Future Motion, Inc. in California over death or serious injuries allegedly caused by the *Nosedive-Ejection Hazard.*

d.      That riders could die or be seriously injured by the *Nosedive-Ejection Hazard* and should consider this before deciding to purchase a Onewheel.

e.      That Onewheel purchasers should install optional nosedive recovery or mitigation

---

[10] https://www.youtube.com/watch?v=ZRbFMmhIrTw
[11] Are   Onewheels   difficult   to   ride?,   Onewheel:   FAQ
https://onewheel.com/pages/faq.

equipment (e.g., roller wheels under the footpad nose) but that such accessories are not available from Defendant but can only be purchased from other third-party vendors.

72.   Defendant's advertising practices were unfair under FDUTPA because they are contrary to well-established public policy favoring truthful and full disclosure.

73.   Defendant's omission of any reference to the *Nosedive-Ejection Hazard* on its website, in its Owner's Manual and in other places is an "unfair act" that offends established public policy and is substantially injurious to consumers, unscrupulous, oppressive, unethical, or immoral.[12]

74.   Had Defendant disclosed the *Nosedive-Ejection Hazard* (by placing a link to CPSC Press Release 23-046 which referenced Defendant's rejection of the CPSC request for a recall for the *Nosedive-Ejection Hazard),* Plaintiff would never have purchased or ridden a Onewheel.

### No Warning of *Ghosting Defect*

75.   On 08/11/2022, Defendant voluntarily recalled [at the urging of the U.S. Consumer Product Safety Commission (CPSC)] 20,500 Onewheel GT footpads for replacement after it "received 813 reports of board operation after dismount, including 11 injuries such as bruises, friction burns, and a twisted ankle."[13]

76.   The defect is that "The footpad can fail to disengage after the rider has dismounted while the board is in motion and the skateboard can unexpectedly continue to operate, posing an injury hazard to bystanders"[14] (here called *Ghosting Defect).*

77.   Defendant claimed it had "made design changes to the front footpad's pressure sensitive sensor to address this issue" and stated that, as of August 2022, "Every new GT currently being built ships with these *updated footpads installed.*"

78.   Though the PINT X is a different model than the recalled Onewheel GT, Defendant still shipped Plaintiff's PINT X – more than 2 months after the CPSC-driven recall – with a

---

[12] *State v. Beach Blvd Auto. Inc.,* 139 So. 3d 380 (Fla. Dist. Ct. App. 2014).
[13] https://recall.onewheel.com/ (CPSC Recall 22-766).
[14]https://www.cpsc.gov/Recalls/2022/Future-Motion-Recalls-Footpads-for-Onewheel-GT-Electric-Skateboards-Due-to-Bystander-Injury-Hazard-Recall-Alert

defective footpad and failed to warn Plaintiff of the *Ghosting Defect.*

79.     Defendant should have replaced the footpad on Plaintiff's Onewheel PINT X with a non-defective and updated footpad like the one applied to the Onewheel GT and its failure to do so was a deceptive trade practice.

### Misleading Advertising – *Ghosting Defect*

80.     Plaintiff brings this claim as a consumer for Defendant's violation of the FDUTPA based on misleading advertising [F.S. § 817.41(1)] that constituted an unfair and deceptive trade practice [F.S. §§ 501.201 et seq.].[15]

81.     Defendant made or disseminated before the general public of Florida misleading advertisement on its website www.onewheel.com in violation of F.S. § 817.41(1):

a.      The website included information about a recall but only for a defective footpad disaffecting the Onewheel GT model;

b.      Defendant failed to state that the Onewheel PINT X also may suffer from this same *Ghosting Defect*;[16]

c.      As a consumer, Plaintiff acted reasonably under the circumstances but was misled into purchasing a Onewheel PINT X detrimentally believing that only the GT model, and not the PINT X model, suffered this inherent safety defect.

### Misleading Advertising – Nosedive-Ejection Hazard

82.     Defendant's advertising of the PINT X on its website and in its Owner's Manual on or about 12/16/2022 was misleading, unfair, and deceptive because it failed to mention the *Nosedive-Ejection Hazard.*

83.     Defendant advertising deceived Plaintiff because it misled Plaintiff (as a consumer acting reasonably in the circumstances) in his purchase of the Onewheel as Defendant's deception was the probable or likely cause of Plaintiff's injury.[17]

84.     Further deception occurred when Defendant made a misrepresentation to the U.S. Government (which the Government included press Release 23-046 issued in response to the CPSC 11/16/2022 recall request) that "The firm [Future Motion, Inc.] sees no reason

---

[15] *Cross v. Point and Pay, LLC* (M.D.Fla.2017), 274 F.Supp.3d 1289.
[16] https://onewheel.com/products/onewheel-pint-x
[17] *Zlotnick v. Premier Sales Grp., Inc.,* 480 F.3d 1281 (11th Cir. 2007).

for riders to stop using their [Onewheel] boards or new riders to not purchase one" when, in fact, Defendant then knew of both the *Ghosting Defect* and the potentially fatal *Nosedive-Ejection Hazard.*

85.　Defendant's omission from its website of a detailed description of what might be expected upon occurrence of the *Nosedive-Ejection Hazard* constitutes a deceptive act or practice under the FDUTPA as this omission misled Plaintiff, offended public policy, and was immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.[18]

### Omissions are Unlawful if Deceptive

86.　Deception under the FDUTPA is an objective test and Plaintiff need not show actual reliance on Defendant's failure to warn of the *Nosedive-Ejection Hazard,*[19] but instead, Plaintiff needs only to show that Defendant's trade practice was likely to deceive a consumer acting reasonably in the same circumstances.[20]

87.　Under this objective test, Defendant's practices were likely to deceive a consumer (acting reasonably under the same circumstances),[21] into erroneously believing that the Onewheel was free of any inherent safety defect(s).

88.　Deception here was by Defendant's innuendo (that the Onewheel PINT X was without defects) and omission (of reference to potentially fatal defects), rather than outright false statements.[22]

### Net Impression Created

89.　These omissions were likely to mislead Plaintiff (acting reasonably as a consumer) by Defendant creating the net impression on its website that the Onewheel PINT X was free of safety defects.[23]

90.　These omissions were likely to mislead a reasonable consumer like Plaintiff and it makes

---

[18] *Florida Emergency Physicians Kang & Associates, M.D., Inc. v. United Healthcare of Florida, Inc.* (S.D.Fla. 2021), 526 F.Supp.3d 1282.

[19] *Westgate Resorts, Ltd. v. Sussman* (M.D.Fla.2019), 387 F.Supp.3d 1318.

[20] *Piescik v. CVS Pharmacy, Inc.,* 576 F. Supp. 3d 1125 (S.D. Fla. 2021)*; Cabrera v. Haims Motors, Inc.* (S.D.Fla.2017), 288 F.Supp.3d 1315.

[21] *Marrache v. Bacardi U.S.A., Inc.* (C.A.11 Fla. 2021), 17 F.4th 1084.

[22] *State Farm Mutual Automobile Insurance Company v. Performance Orthopaedics & Neurosurgery, LLC* (S.D.Fla. 2017), 278 F.Supp.3d 1307.

[23] *Fruitstone v. Spartan Race Inc.,* 464 F. Supp. 3d 1268, 1287 (S.D. Fla. 2020).

no difference if Defendant's statements were technically or literally true.[24]

**Deception Act is Actionable if Likely to Mislead**

91.     A deceptive practice under FDUTPA is a representation, omission, or practice that is likely to mislead a consumer acting reasonably in the circumstances and to the consumer's detriment.[25]

92.     The determination of how Plaintiff (acting as a reasonable consumer) would interpret Defendant's ads on its website is an issue of fact for the jury.[26]

## <u>COUNT TWO - STRICT LIABILITY</u>

Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth here.

93.     Defendant is strictly liable to Plaintiff because:

    a.     Defendant placed in the market the Onewheel PINT X knowing that Plaintiff would use it without the need for further inspection for defects;

    b.     The Onewheel had a defect that caused injury to Plaintiff;

    c.     Defendant should have protected Plaintiff from this product because this Onewheel is:

        i.     Unreasonably dangerous (even when used according to Defendant's instructions);

        ii.     Fraught with unexpected dangers and inherent safety defects (i.e., *Ghosting Defect* and the *Nosedive-Ejection Hazard)* which existed when Defendant shipped the Onewheel PINT X to Plaintiff.[27]

    d.     This defective Onewheel was the proximate cause of serious personal injury and damage to Plaintiff.[28]

94.     Defendant is engaged in the business of designing, manufacturing and selling Onewheel PINT X for profit and this board was placed by Defendant into the stream of commerce for sale to Plaintiff and the general public.

---

[24] *Coleman v. CubeSmart,* (S.D.Fla. 2018), 328 F.Supp.3d 1349.
[25] *Fruitstone v. Spartan Race Inc.* (S.D.Fla.2020), 464 F.Supp.3d 1268.
[26] *Zamber v. American Airlines, Inc.* (S.D.Fla. 2017), 282 F.Supp.3d 1289.
[27] *Cassisi v. Maytag Co.,* 396 So. 2d 1140 (Fla. Dist. Ct. App. 1981).
[28] *West v. Caterpillar Tractor Co.,* 336 So.2d 80 (Fla. 1976).

95.   The Onewheel was delivered to Plaintiff without any change of its condition after it Defendant sold it to Plaintiff who never altered, changed or modified his Onewheel.

96.   Defendant remains liable to Plaintiff even though claiming it exercised all possible care in the preparation and sale of the Onewheel PINT X.[29]

97.   Plaintiff always operated the Onewheel as it intended.

98.   Plaintiff followed all warnings and instructions in using the Onewheel.

99.   Plaintiff never performed any maintenance, service and/or repairs on Onewheel.

100.  Both the *Ghosting Defect* and the *Nosedive-Ejection Hazard* rendered the Onewheel unreasonably dangerous and the proximate cause of Plaintiff's injuries.

101.  In promoting and selling to Plaintiff a dangerous Onewheel product, Defendant undertook a special responsibility toward Plaintiff as a consumer to protect him from, and warn him in specific detail about, the risks of injury due to the *Ghosting Defect* and the potentially fatal *Nosedive-Ejection Hazard*.

102.  The Onewheel PINT X is a defective product because it is "dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."[30]

### Consumer Expectations Test

103.  Defendant induced Plaintiff to purchase and use its Onewheel via its website at www.onewheel.com.

104.  The Onewheel PINT X was defectively designed because it did not perform as safely as an ordinary consumer would expect when used in the intended or reasonably foreseeable manner.

105.  By Defendant placing on the market this dangerous Onewheel PINT X for use and consumption, and by inducing, promoting and encouraging Plaintiff's purchase of this board, Defendant undertook a certain and special responsibility toward Plaintiff who was, in fact, injured by this Onewheel.[31]

---

[29] Restatement (Second) of Torts § 402A (1965).
[30] Restatement (Second) of Torts §402A, Comment (i).
[31] *Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 510 (Fla. 2015), citing Restatement (Second) of Torts § 402A.

106. Defendant is strictly liable in tort for Plaintiff's injuries sustained as the result of Defendant's *Nosedive-Ejection Hazard* regardless of whether it was caused by the embedded software, mechanical design, electrical design, or manufacturing.[32]

**Remedies to Cure Onewheel Design Defects**

107. Plaintiff's reasonable expectations were that if he used the board in the expected manner, when the Onewheel PINT X defected an imbalancing danger, the board would alert him with a Push-Back Warning but that did not occur on 03/18/2023.

108. To protect Plaintiff, Defendant should have implemented these changes to the Onewheel PINT X before its sale and delivery to Plaintiff:

a. *Control Board*. Program the embedded software to direct a controlled deceleration (rather than an abrupt stoppage which tilts the rider forward, forcing the front footpad to nosedive while catapulting the rider off the board);

b. *Redundant Warnings*. Program the embedded software to activate warnings in advance of a nosedive and coincident with *Pushback Warning* as follows:

i. *Audible Warning Alarm.* Broadcast a high-decibel klaxon or other audible warning from an integrated speaker;

ii. *Visible Flashing Warning Light.* Illuminate an alternating, multi-colored, emergency flashing LED lights visible during daylight;

iii. *Kinesthetic Warning Alert.* Activate unambiguous, *Pushback Warning* on the footpad with vibrations like highway rumble strips.

c. *Bumper Wheels*. Provide a failsafe to ride out an abrupt nosedive with a gradual deceleration mounting (under the front footpad) rollers or fangs (see exemplar, below) as a precaution to avoid foreseeable injuries.[33]

---

[32] *Ford Motor Co. v. Hill,* 404 So. 2d 1049 (Fla. 1981).
[33] *Advance Chem. Co. v. Harter,* 478 So. 2d 444 (Fla. Dist. Ct. App. 1985).



109.    The PINT X is defective in design because the foreseeable risks of harm could have been reduced or avoided had Defendant adopted a reasonable alternative and inexpensive safety measures.

### COUNT THREE – NEGLIGENCE

Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth here.

110.    Defendant designed, manufactured, distributed, supplied, and sold the PINT X and otherwise placed the PINT X used by Plaintiff into the stream of commerce.

111.    Defendant owed a duty to properly design, manufacture, distribute, supply, and sell the PINT X in a safe condition and without defect.

112.    Defendant owed a duty to adequately test, inspect, and assure the quality of the PINT X before placing it into the stream of commerce.

113.    Defendant owed a duty to provide adequate warnings, instructions, and information with the PINT X.

114.    Defendant breached the above duties.

115.    Defendant's breach of the above duties actually and proximately caused injury and damage to Plaintiff.

### COUNT FOUR - EXPRESS AND IMPLIED WARRANTIES

### Express Warranty

Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth here.

**WARRANTY**

WARRANTY This agreement outlines the **LIMITED WARRANTY** coverage supplied by Future Motion Inc., hereinafter to be called the **COMPANY**, to the **USER**, which is defined as an individual who has purchased the Onewheel Pint (hereinafter to be called the **PRODUCT**) in a retail establishment or via an on-line storefront as approved by the **COMPANY** or from a **COMPANY**-authorized sales representative. Purchasing any **PRODUCT** from an unauthorized reseller, including any online purchase other than directly from the **COMPANY**, will void all product warranties to the extent permitted by law.

The **COMPANY** warrants that the **PRODUCT**, other than the footpad, tire and battery pack, will be free from defects in materials and workmanship for a period of 12 months/2000 KM (1243 miles), whichever comes first. The warranty for the footpad, tire and battery pack is 6 months/1000 KM (622 miles).

ONEWHEEL PINT OWNER'S MANUAL

If the **PRODUCT** proves defective **AND** a claim is filed during the warranty period, the **COMPANY**, at its option, will:

01  Repair the **PRODUCT** by means of telephone support, email support, or by providing service at no charge for parts or labor.

02  Replace the **PRODUCT** with a comparable **PRODUCT** which may be new or refurbished.

03  Refund the original amount paid for the **PRODUCT**, less a reasonable allowance for usage, upon its return.

116.    Defendant's warranted Plaintiff's Onewheel PINT X as follows:[34]

117.    In the Owner's Manual Defendant limited the implied warranty of merchantability and fitness for the particular purpose of an electric hoverboard to 1 year from the date of purchase (12/16/2022):[35]



118.    On or about 04/17/2023, Plaintiff registered his purchase with Defendant at www.onwheel.com/pages/register but received no confirmation.

119.    Plaintiff made a claim during the warranty period via his attorney's letter (dated 05/01/2023) mailed to Defendant's principals who never responded.

120.    Defendant breached its express warranty with Plaintiff by, at the very least, failing to honor its contract to  "Refund the original amount paid for the PRODUCT, less a reasonable allowance for usage, upon its return."[36]

**Implied Warranty**

---

[34] Owner's Manual, p. 74.
[35] Owner's Manual, p. 77.
[36] Owner's Manual, p. 74.

121.    Defendant is a "merchant" with respect to electric hoverboards [F.S. § 672.104(1)] and a "seller" [F.S. § 672.103(1)(d)] of a motorized hoverboard.

122.    These Onewheel boards are "goods" [F.S. § 672.105(1)].

123.    Under Florida's Uniform Commercial Code (UCC), 2 distinct implied warranties apply here, namely an implied warranty of merchantability and an implied warranty of fitness for a particular purpose.[37]

124.    Both warranties applied to the Onewheel PINT X which was sold new to Plaintiff and warranted to be in merchantable condition and fit for the ordinary purpose for which electric hoverboards are used [F.S. § 672.314(2)(c)].

125.    While the Owner's Manual limited the implied warranty of merchantability and fitness for the particular purpose of an electric hoverboard to 1 year from the date of purchase (12/16/2022 to 12/15/2023), the accident on 03/18/2023 fell within the contractual limitations period.

126.    When sold to Plaintiff, the Onewheel PINT X was neither in merchantable condition nor fit for the ordinary purpose for which such electric boards are used given the undisclosed *Ghosting Defect* and *Nosedive-Ejection Hazard* which presented an actual and imminent risk to rider safety.

127.    Onewheels contained an inherent defect that was substantially certain to result in a malfunction during the useful life of the product.

128.    It was reasonable for Defendant to expect that Plaintiff may use or be disaffected by the Onewheel defect(s).

129.    Defendant was provided notice of these issues within a reasonable time after Plaintiff's learned of the non-conforming or defective nature of the boards by the letter sent from Plaintiff's counsel (dated May 1, 2023) which Defendant ignored.

130.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff had been damaged.

**<u>RELIEF REQUESTED</u>**

**Count One - FDUTPA**

---

[37] *Armadillo Distribution Enterprises, Inc. v. Hai Yun Musical Instruments Manufacture Co. Ltd.* (M.D.Fla.2015), 142 F.Supp.3d 1245.

131. Under Count One, Florida Deceptive and Unfair Trade Practices Act (FDUTPA) [F.S. § 501.201 et seq.], Plaintiff requests:

    a. A declaratory judgment [F.S. § 501.211(1)] that Defendant's act or practice of manufacturing, selling, distributing and/or shipping Onewheels manifesting the *Nosedive-Ejection Hazard* and *Ghosting Defect* is likely to continue violating FDUTPA.

132. Damages for:

    a. Actual damages incurred by Plaintiff from Defendant's violation of FDUTPA [F.S. § 501.211(2)] including a refund of the $1,806 purchase price;

    b. Attorney fees and court costs [(F.S. § 501.2105) and § 501.211(2)];

    c. Pre-judgment and post-judgment interest on all damages including attorney fees and costs;

    d. Punitive damages as requested below;

    e. Such other relief as the Court may find appropriate.

## Count Two - Strict Liability

### And

## Count Three – Negligence

### And

## Count Four - Express and Implied Warranties

133. Plaintiff additionally requests under Counts Two, Three and Four:

    a. An award of damages for all actual, general, special, incidental, statutory, punitive, and consequential damages;

    b. An award of reasonable attorney fees and costs;

    c. An award of pre-judgment and post-judgment interest on all damages including attorney fees and costs;

    d. Punitive damages as requested below;

    e. Such other relief as the Court may find appropriate.

## Punitive Damages

134. Plaintiff requests punitive damages because evidence in the record shows there is a reasonable basis for recovery of punitive damages [F.S. § 768.72(1)].

135. Here punitive damages may be imposed for the conduct of some employee(s) or agent(s) [F.S. § 768.72(3)] because there is clear and convincing evidence that Defendant was guilty of:

    a. *Intentional misconduct* in that Defendant had actual knowledge of the wrongfulness of its conduct and the high probability that injury to Plaintiff would result and, despite that knowledge, intentionally sold defective Onewheels without adequate warnings of the dangers involved and this course of conduct resulted in injury to Plaintiff [F.S. § 768.72(2)(a)].

    b. *Gross negligence* because Defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of Plaintiff [F.S. § 768.72(2)(b)].

136. Defendant Future Motion, Inc. is liable for punitive damages for the conduct of its employee or agent who engaged in intentional misconduct or gross negligence, or both, and:

    a. Actively and knowingly participated in the conduct pled above [F.S. § 768.72(3)(a)], or

    b. The officers, directors, or managers of Defendant corporation knowingly condoned, ratified, or consented to such conduct [F.S. § 768.72(3)(b)], or

    c. Defendant corporation engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by Plaintiff [F.S. § 768.72(3)(c)].

137. Defendant's wrongful conduct was motivated solely by unreasonable financial gain and the unreasonably dangerous nature of the conduct, plus the high likelihood of injury from this conduct, was actually known by the managing agent, director, officer, or other person responsible for making Defendant's policy decisions and, accordingly, the Jury may award punitive damages up to 4 times the amount of compensatory damages awarded to Plaintiff [F.S. § 768.73(b)].

### JURY DEMAND

138. Plaintiff demands a jury trial on all issuable facts.

Respectfully submitted,
/s/ Eitan J. Goldrosen

Eitan J. Goldrosen
Florida Bar No.: 1025140
T. Michael Morgan, Esq.
Florida Bar No.: 062229
Morgan & Morgan, P.A.
20 North Orange Ave., Ste. 1600
Orlando, Florida 32801
Telephone: (321) 361-3537
Primary Email:
egoldrosen@forthepeople.com
mmorgan@forthepeople.com
Secondary Email:
csmaya@forthepeople.com
akelseyflowers@forthepeople.com
Attorneys for Plaintiff

Thomas H. Oehmke, Esq.
Michigan Bar No. P22963
(*Pro Hac Vice* - To be requested)
11997 E Camp Haven Rd
Northport MI 49670
Telephone: (305) 735-4044
Primary Email:
LawMode@comcast.net
Attorney for Plaintiff